IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00059-FL

**Malichi E. Guyton,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

Plaintiff Malichi E. Guyton instituted this action on March 31, 2015, to challenge the denial of his application for social security income. Guyton claims that Administrative Law Judge Edward T. Morriss erred in his determination by failing to properly account for his restrictions in concentration, persistence, and pace. He further contends that ALJ Morriss's step five finding failed to identify jobs that he was capable of performing, given his non-exertional limitations. Both Guyton and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 23, 30.

After reviewing the parties' arguments, the court has determined that ALJ Morriss erred in his decision. The court cannot conclude that substantial evidence supports a finding that Guyton's moderate limitations in concentration, persistence, and pace were sufficiently addressed in the residual functional capacity ("RFC") assigned by the ALJ. This issue requires remand. However, ALJ Morriss did not err at step five by relying on the Medical-Vocational Guidelines to conclude that there were other jobs that existed in significant numbers in the national economy that Guyton was capable of performing.

Therefore the undersigned magistrate judge recommends[1] that Guyton's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that and that the matter be remanded to the Commissioner for further proceedings.

I. **Background**

On February 21, 2012, Guyton protectively filed applications for supplemental security income and disability benefits on the basis of a disability that allegedly began on August 30, 2010. After his claims were denied at both the initial stage and upon reconsideration, Guyton appeared before ALJ Morriss for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Morriss determined Guyton was not entitled to benefits because he was not disabled. Tr. at 12–22.

ALJ Morriss found that Guyton's depression qualifies as a severe impairment. *But* his impairment did not meet or equal a Listing impairment. *Id.* at 14–15. ALJ Morriss determined that Guyton had the RFC to perform a full range of work at all exertional levels with additional non-exertional limitations including: he can have no public contact and he is limited to understanding, remembering, and carrying out simple instructions. *Id.* at 17. ALJ Morriss also concluded that Guyton was unable to perform any past relevant relevant work but that a finding of "not disabled" was directed by Medical-Vocational Guideline Rule ("Grid Rule") 204.00. *Id.* at 21. In making this finding, ALJ Morriss concluded that Guyton's non-exertional limitations had little or no effect on the occupational base. *Id.* Thus, ALJ Morriss found that Guyton was not disabled. *Id*. at 22.

After unsuccessfully seeking review by the Appeals Council, Guyton commenced this action on March 31, 2015. D.E. 5.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**II.     Analysis**

   **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals the Commissioner's final decision, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

   **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical evidence

Guyton has received medical care for a number of medical conditions including diabetes, bipolar disorder, depression, gender transformation, gastroesophageal reflux disease, hypertension, and ulcerative colitis. Many of these conditions are controlled with medication and other conservative measures. Tr. at 14–15.

Guyton consulted with an endocrinologist in December 2010, where it was noted that he had anxiety and depressed mood with crying. *Id.* at 553–54. In August 2011, he was transported to the Emergency Department for suicidal thoughts but was discharged the next day. *Id.* at 634–35. In November 2011, he was experiencing depression. *Id.* at 580. Guyton went to the Emergency Department in June 2012 with suicidal ideations and thoughts of overdosing. *Id.* at 646. He was admitted for psychiatric hospitalization for 12 days. *Id.*

In August 2012, Guyton sought treatment from a mental health clinic for depression with suicidal thoughts and feelings of worthlessness. *Id.* at 1021. Providers diagnosed him with bipolar disorder, noted that he had traits of personality disorder, and prescribed medication. *Id.* at 1029, 1035. A follow-up clinical assessment in August 2013 noted that Guyton was isolated and suffering from depression. *Id.* at 1056. However, he reported that medications were working and that he wanted to get back to individual therapy. *Id.* at 1014, 1021.

Dr. Reuben Silver performed a psychological evaluation of Guyton in September 2012. *Id.* at 690–93. Dr. Silver noted that Guyton had significant depressive bouts but that he was not currently depressed and that he had coherent, logical, and goal-directed thought processes. *Id.* at

690–91. Dr. Silver diagnosed bipolar disorder and found that Guyton would be able to adjust to work unless he became profoundly depressed. *Id.* at 692.

During the relevant time period, Guyton sought treatment for other conditions, including abdominal pain and diabetes care. *Id.* at 667–77, 975–1011, 1051–55. Records related to those treatments noted normal mood and affect and did not reflect complaints related to mental health issues. *Id.*

At the hearing, Guyton testified that he experiences depression, anxiety, and panic attacks. *Id.* at 31–32. He stated that he experiences crying spells, does not leave home often, and has trouble getting along with others. *Id.* at 32–34.

### D.     Limitations in concentration, persistence, and pace

Guyton first asserts that ALJ Morriss erred in accounting for his moderate limitations in concentration, persistence, and pace when formulating the RFC. The Commissioner maintains ALJ Morriss properly accounted for Guyton's limitations in concentration, persistence, and pace. The court cannot conclude that ALJ Morriss's step five inquiry complies with the ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), a decision issued after ALJ's Morriss's determination.

In *Mascio*, the Fourth Circuit noted that it is reversible error for an ALJ to present RFC findings to a vocational expert in the form of a hypothetical if the ALJ "fail[s] to account for a relevant factor when determining [the plaintiff's RFC]." *Mascio*, 780 F.3d at 638. The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, the Fourth Circuit emphasized that "[o]nly

5

the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

Here, at step three, ALJ Morriss concluded that Guyton had moderate limitations in his ability to maintain concentration, persistence, and pace. Tr. at 16. ALJ Morriss's RFC limited Guyton to no significant public contact and to understanding, remembering, and carrying out simple instructions. *Id.* at 17. The issue presented is whether the RFC properly captures the limitations found at at step three with respect to concentration, persistence, and pace.

Several North Carolina federal district courts to address this issue have determined that remand was warranted because the limitation in concentration, persistence, and pace was not accounted for in the RFC and/or hypothetical question to the VE. *See Weeks v. Colvin*, No. 5:14-cv-155-D, 2015 WL 524927, at *4 (E.D.N.C. Sep. 8, 2015) (limitation to simple, routine, repetitive tasks with only occasional contact with the general public and few workplace changes did not sufficiently address claimant's limitations in pace); *Taylor v. Colvin*, No. 1:14-cv-629, 2015 WL 4726906 (M.D.N.C. Aug. 10, 2015) (RFC determination that claimant could understand, remember, and carry out one and two step instructions/tasks did not reflect address moderate limitations in concentration, persistence, and pace); *Salmon v Colvin*, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace and did not address her ability to say on task).

The undersigned cannot conclude that the RFC sufficiently accounts for Guyton's difficulties in maintaining concentration, persistence, and pace. In concluding that Guyton had moderate limitations in this functional area, ALJ Morriss noted that a psychological evaluation found that Guyton was only able to repeat six digits forward and six digits in reverse, which suggested he may have difficulty in concentration and attention. Tr. at 16. The Commissioner submits that this does not suggest that Guyton would be off task in a work environment involving only simple tasks and no significant public contact. D.E. 31 at 8. The court declines the invitation to make such an inference based on facts not explicitly found by ALJ Morriss.

Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace, ALJ Morriss's decision fails to sufficiently explain how Guyton's moderate limitations in this functional area are reflected in the RFC so as to allow the court to conduct meaningful review. *See Scruggs v. Colvin*, No. 3:14-cv-00466, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) ("Because the court is left to guess as to how the ALJ concluded that Plaintiff could perform the relevant functions in light of her mental limitations, the court finds that substantial evidence does not support his decision and that remand is therefore appropriate."); *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). Accordingly, remand for further consideration of Guyton's limitations in maintaining concentration, persistence, and pace is appropriate. On remand, the ALJ should specifically state how the RFC determination reflects Guyton's limitations in concentration, persistence, and pace or whether the ALJ finds that the moderate limitations in concentration, persistence, and pace had no impact on his ability to work.

### E. Other work

Guyton also contends that ALJ Morriss erred at step five by failing to identify other jobs that he was capable of performing. Specifically, he argues that, given the presence of non-exertional impairments, the ALJ could not rely on the Grids at step five but instead had to obtain evidence of other work that Guyton could perform. The Commissioner maintains that ALJ Morriss did not err in relying on the Grids to determine that other work existed. The court concludes that the Commissioner is correct and that there was no error at step five.

While a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass*, 65 F.3d at 1203 (citing *Hunter v. Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989);

*Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook v. Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

However, not every non-exertional limitation rises to the level of a non-exertional impairment and the latter will only be found where there is substantial evidence to support the finding that the non-exertional limitation affects an individual's residual capacity to perform work of which he is exertionally capable. *Walker*, 889 F.2d at 49; *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). The Grids may still be relied upon to find a claimant is not disabled where non-exertional impairments, even severe ones, do not significantly reduce a claimant's occupational base. *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

Here, ALJ Morriss found that Guyton had non-exertional limitations. Given the presence of these non-exertional limitations, the Grids are not controlling but instead serve as a framework for the ALJ's analysis. ALJ Morriss determined that Guyton's non-exertional limitations had little or no effect on the occupational base for light work. Tr. at 21. Case law supports the conclusion that Guyton's specific non-exertional limitations do not so erode the job base so as to preclude reliance on the Grids. *See Jaynes v. Colvin*, No. 1:12-CV-168, 2014 WL 3109243 (M.D.N.C. July 8, 2014) (limitation to simple, routine, repetitive tasks with limited interpersonal interaction would not significantly erode job base and thus does not prevent an ALJ from relying on the Grids); *Simpson v. Colvin*, No. 3:13-cv-250, 2014 WL 806121, at *3 (E.D. Va. Feb. 28, 2014) (simple, unskilled work with no more than occasional contact with the general public were non-exertional limitations that did not significantly erode the occupational base); *Smith v. Colvin*, No. 3:13–CV–570–MOC, 2014 WL 2159122, at *4 (W.D.N.C. May 23, 2014) ("The ALJ concluded [the] plaintiff could do medium unskilled work with limited public contact.... The ALJ reasoned [that] unskilled work usually involves working with things and not the public, a finding

9

which finds support in the regulations and case law within the Fourth Circuit.... The ALJ was not obligated to bring in a VE and properly relied on the Grids in finding [the] plaintiff not disabled." (internal citation omitted); *Scott v. Colvin*, No. 1:12-CV-170, 2013 WL 3927607, at *6 (W.D.N.C. July 29, 2013) (finding "limitation to simple, unskilled, entry level work that allows for less stress work without public contact or significant interaction with others would not significantly erode the occupational base represented by the Grids.") (citation omitted); *Eason v. Astrue*, No. 2:07–CV–00030, 2008 WL 4108084, at *16–17 (E.D.N.C. Aug. 29, 2008) (finding no error in ALJ's reliance on the Grids where the ALJ found claimant capable of the mental activities required by unskilled work-understanding, remembering and carrying out simple instructions and making simple work-related decisions).

Inasmuch as ALJ Morriss concluded that the non-exertional limitations had little or no impact on the occupational base, and determined that a finding of "not disabled" was directed by Rule 204.00, the Commissioner's step five burden was satisfied. *See Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990) (noting that the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform). Therefore, testimony from a VE identifying jobs available in the national economy compatible with Guyton's RFC was not required. S.S.R. 83–14, 1983 WL 31254, at *6 (when a claimant has a combination of non-exertional and exertional limitations and it is clear that the non-exertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary); *see also Woody v. Barnhart*, 326 F. Supp. 2d 744, 746 (W.D. Va. 2004) (finding no ALJ error in failing to obtain VE testimony about occupations available for a person suffering from non-exertional limitations where the ALJ made a specific finding that the claimant's limitations did not amount to non-exertional

impairments); *Rogers v. Barnhart*, 207 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (noting the ALJ was not obligated to employ a VE because claimant's non-exertional impairments did not rise to a level which prevented a wide range of activity at the sedentary level).

Thus, the undersigned magistrate judge concludes that ALJ Morriss's use of the Grids was not impermissible because the non-exertional limitations did not significantly erode the occupational base. Additionally, testimony from a VE was not required at step five. Therefore, Guyton's arguments on these issues are without merit and should be rejected.

### III.  Conclusion

For the forgoing reasons, the court recommends that Guyton's Motion for Judgment on the Pleadings (D.E. 23) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 30) be denied, and that the Commissioner's final decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review**

**of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins***, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: February 5, 2016.

 *Robert T. Numbers II*
 _____
 ROBERT T. NUMBERS, II
 UNITED STATES MAGISTRATE JUDGE